**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **C.L. BY NEXT FRIENDS AND** | § | |
| **GUARDIANS, R.L. AND E.L.** | § | |
| | § | |
| **v.** | § | **A-12-CA-589 LY** |
| | § | |
| **LEANDER INDEPENDENT SCHOOL** | § | |
| **DISTRICT, et al.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are the Motion to Dismiss of Defendants Leander I.S.D. and Bret Champion (Doc. No. 6); Plaintiff's Amended Response to LISD & Bret Champion's Motion to Dismiss (Doc. No. 9); Defendant Leander Independent School District and Bret Champion's Reply to Plaintiff's Response to Defendants' Motion to Dismiss (Doc. No. 10). The District Court referred these Motions to the undersigned Magistrate Judge for report and recommendation. In an Order dated April 9, 2013, the undersigned granted Plaintiffs' Motion for Leave to File Third Amended Complaint, and on April 23, 2013, the Court held a hearing on all pending motions.

## I.  FACTUAL BACKGROUND

Minor Plaintiff C.L. is classified as legally blind and is autistic. *See* Third Amended Complaint at p. 2. C.L. attended Leander Independent School District ("LISD") where he was accepted as a child with a disability pursuant to the Rehabilitation Act and the Americans with Disabilities Act. *Id.*

Plaintiff alleges that for over four years, from September 2006, to December 2010, his parents reported to LISD known incidences of bullying, threats and potential battery by C.L.'s peers.

*Id.* The e-mails stated the dates of the occurrences and identified the bullies by name. C.L. contends that despite these reports, LISD required C.L. to use the bathroom unsupervised, with the boys known to bully him.[1] C.L.'s parents contend that they were reassured that the named bullies were kept away from C.L., despite the fact that he was sent unsupervised into the bathroom with these boys on a regular basis. *Id.* at p. 15. On December 15, 2010, C.L. reported to his therapist that he was forced to use the restroom even when he did not have to go; that the bullies would yank him out of the stall when his pants were down and make him stroke and fondle his penis; and that one of the boys grasped C.L.'s penis and began stroking it back and forth stating "I will show you how to do it." *Id.* at p. 2-3.

During a subsequent interview with police officers, C.L. reported that when he did not play with his penis exactly as the four boys commanded, the boys would beat their fists against their hands, suggesting that they would beat C.L. up if he did not comply. *Id.* at p. 3. C.L. complied. C.L. also reported that in the cafeteria and the classroom the boys that bullied him also touched him inappropriately through his clothes under tables. When C.L. would push them away, the boys would tell on him and get him in trouble for violating their "private space." *Id.* at p. 3. C.L.'s parents immediately reported this information to LISD. *Id.* at p. 2.

On January 4, 2011, twelve boys were interviewed by LISD and the Cedar Park Police. The boys corroborated that C.L. was subjected to harassment in the classroom and the bathroom. No charges or juvenile proceedings were initiated as a result of this investigation. Defendants' Response at p. 3. Eventually, C.L.'s parents engaged in three Admission Review and Dismissal proceedings

---

[1]C.L. alleges that it was known to LISD that C.L. could not close the stall door and could not use the restroom without pulling his pants the entire way down.

with LISD.  C.L.'s parents were dissatisfied with the outcomes of these meetings and they removed C.L. from school.  C.L. never returned to LISD and instead was enrolled in a private school.

C.L. alleges that LISD failed to provide C.L. with an appropriate environment in which he could obtain an education, forcing him to a private school, in violation of his civil rights.  He brings this suit pursuant to 42 U.S.C. § 1983 for violations of the Fifth and Fourteenth Amendments to the Constitution, violations of Title IX of the Education Amendments of 1972, violations of § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794(a)), and violations of the Americans with Disabilities Act.  He also brings state law tort claims against various LISD staff and administration. In his Third Amended Complaint at page 4, C.L. states:

> In summary, Plaintiff seeks remedy for increased anxiety and social fear and Post Traumatic Stress Disorder as well as for regression of progress in occupational therapy and physical therapy of which are remedies available pursuant to these acts for: damages in the past and future for pain and suffering, mental anguish,  physical impairment and physical disfigurement; compensatory services in the past and future; costs; reimbursement of out-of-pocket expenses; attorney fees and costs; punitive damages; as well as other forms of equitable relief.

As set forth in Plaintiff's Third Amended Complaint, C.L.'s claims brought pursuant to the IDEA were settled through a formal mediation agreement with LISD and are not part of this suit.

## II.  MOTION TO DISMISS

Defendants move to dismiss based upon FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted."  While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  The

Supreme Court recently expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

### A.    Section 1983 Claims

Plaintiff brings due process and equal protection claims against LISD and Champion pursuant to the Fifth and Fourteenth Amendments. The Fifth Amendment proscribes deprivations of life, liberty, or property without due process of law by federal actors, *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000), while the Fourteenth Amendment proscribes such action by state actors. *Newsome v. E.E.O.C.*, 301 F.3d 227, 232 (5th Cir. 2002).  C.L. has not alleged that any of the defendants were acting under authority of the federal government, so presumably he brings his claims only in the context of the Fourteenth Amendment. "To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994).

### 1.    Due Process Claim Against LISD

C.L.'s claims are based upon sexual abuse he suffered in a school bathroom at the hands of other fourth grade students, and his allegations that LISD caused him to suffer those injuries through

4

its policies.[2] After he reported the incident sto his parents, he did not return to school in the Leander

Independent School District. "[N]othing in the language of the Due Process Clause itself requires

the State to protect the life, liberty, and property of its citizens against invasion by private actors."

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) (emphasis added).

"There is a recognized substantive due process right for individuals to be free from bodily harm

caused by the state, but as a general rule, there is no constitutional duty that requires state officials

to protect persons from private harms." *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010).

A court faced with a claim that a school district is liable for a student's injury examines whether the

harm to that student was caused by a constitutional violation and, if so, whether the school district

is responsible for that violation.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).

The Fifth Circuit has "stated time and again that without an underlying constitutional violation, an

essential element of [school district] liability is missing."  *Doe ex rel. Magee v. Covington County*

*School District*, 675 F.3d 849, 866-67 (5th Cir. 2012).

While C.L. appears to agree with this general proposition, he contends that his case falls

within an exception to the doctrine:

> Plaintiff agrees with Defendants' statement that there is a general rule of no liability
> for the private violence of others, and that there are two exceptions, but rejects
> Defendants' contentions that these exceptions don't apply to the case at hand. . . . the
> first exception applies when there is deprivation of constitutional rights due to
> conscious indifference of a policy or custom. The second exception applies when a
> 'special relationship' exists between the plaintiff and the state actor.

---

[2]C.L.'s Third Amended Complaint alleges that LISD violated his substantive due process rights when LISD: (1) failed to follow its own zero-tolerance policies on bullying; (2) failed to investigate incidents of injurious conduct inflicted on C.L.; and (3) failed to take corrective action after becoming aware of injuries resulting from  misconduct toward C.L. thereby subjecting him to the known risk of bullying in the unsupervised bathroom environment. Third Amended Complaint at p. 29.

Response at p. 7.  The Court notes that C.L. has not quite accurately stated the law on this point. Physical injury to, or death of, a student violates due process only in two limited circumstances: (1) when the plaintiff's physical injury was inflicted by a state actor—such as a school employee; or (2) when the plaintiff's injury was inflicted by a private actor, but the plaintiff had a "special relationship" with the State that gave rise to a duty to protect the plaintiff from the private actor.  *Id.* at 855–56.  As a matter of law, "[n]o . . . special relationship exists between a public school and its students."  *Id.* at 870 (Jolly, J., specially concurring) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)).  The Supreme Court first mapped out the "special relationship" exception in *DeShaney*.  Under the special relationship exception, a state may be required to protect a citizen from even private harm, "when the State takes a person into its custody and holds him there against his will."  *Id.* at 199–200.  The Fifth Circuit has subsequently extended the special relationship exception to the following three scenarios: (1) incarceration, (2) involuntary institutionalization, and (3) the placement of a child in foster care.  *Griffith v. Johnston*, 899 F.2d 1427, 1439 (5th Cir. 1990).  As can be seen, none of these three circumstances are present in this case.

C.L. relies on *Teague ex rel. C.R.T. v. Texas City Indep. School Dist.*, 348 F.Supp.2d 785, 792–93 (S.D. Tex .2004) in support of his argument that a "special relationship" exists here. Whatever persuasive value *Teague* may have had is foreclosed by the Fifth Circuit's decision in *Doe v. Covington*, 675 F.3d 849 (5th Cir. 2012).  In *Teague* the court construed the special relationship doctrine "in the context of this particular plaintiff" and held that the plaintiff adequately alleged a

special relationship between a public school and a child with Down's Syndrome.[3]  Last year, the Fifth Circuit was presented in *Covington* with a case where school personnel allowed a nine-year old girl to "check out" with a man who was not authorized to take her out of school.  The man molested the child on six separate occasions.  *Id.* at 853 (majority opinion).  As the Fifth Circuit explained, the constitutional claim was based not on the molestation, "but rather upon the school's allegedly deficient check-out policy, which allowed the molestation to occur" because the policy did not require school officials to verify the identity of individuals before releasing children to their custody. *Id.* at 855.  Finding that the school district defendants had no constitutional duty to protect the plaintiff from a private actor, the Fifth Circuit determined that the plaintiff failed to allege a violation of any constitutional right.  *Id.* at 863.  The *Covington* opinion clarifies that a claim that a school district has violated a student's right to bodily integrity requires proof of a special relationship between the student and the school.  And in doing so, *Covington* explicitly confined the "special relationship" exception to the three scenarios listed above.  *See Covington*, 675 F.3d at 856–57 ("We have not extended the *DeShaney* special relationships exception beyond these three situations, and have explicitly held that the state does not create a special relationship with children attending public schools.").  Thus, to the extent *Teague* holds otherwise, it is not good law after *Covington*.

C.L. appears to contend that there is another exception to the doctrine that the state does not have a constitutional duty to prevent harm by third parties, describing the exception as "conscious indifference to a policy or custom."  This is not an accurate statement of the law.  "Conscious indifference to a policy or custom" by itself is insufficient to make out a constitutional claim under

---

[3]The court ultimately vacated that ruling, granting summary judgment when discovery revealed that the victim was in fact 18 years old at the time of the incident, was no longer subject to compulsory attendance, and had the capacity of a 13 year-old.  *See* 386 F.Supp.2d 893, 896 (S.D. Tex. 2005).

§ 1983.  It appears that C.L. has conflated the *Monell* doctrine with the special relationship exception.  Under *Monell*, a school district may only be held liable for violating a person's constitutional rights if it did so due to one of its policies or customs.  *See Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978).  Without an underlying constitutional violation, however, *Monell* has no application.  To state a constitutional violation, C.L. must first demonstrate the existence of a special relationship between him and LISD, something he cannot do, for the reasons just discussed.

### 2.  Equal Protection Claims Against LISD

C.L. also alleges that LISD violated his constitutional rights by "singularly discriminating against C.L. as a class of one in failing to follow school board policies and in response to incidents of bullying and harassment against him" and "and discriminating against C.L. as a child with a disability in failing to follow school board policies and in response to incidents of bullying and harassment against him."  Third Amended Complaint at p. 29.

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer,* 180 F.3d 699, 705 (5th Cir. 1999) (quoting *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989)).  "[The Supreme Court has] recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (citing *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty., W. Va.*, 488 U.S. 336 (1989)). But "if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if

8

irrational—does not deny them equal protection of the laws." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)).

In *Estate of Carmichael ex rel. Carmichael v. Galbraith*, 2012 WL 13568 (N.D. Tex. 2012), plaintiffs made a similar argument, contending that a school district discriminated against their son when it failed to follow its own policies and procedures in responding to incidents of bullying and harassment committed against their son. Judge Fitzwater dismissed the claims because the plaintiffs had failed allege that, in response to incidents of bullying and harassment of other students, one or more defendants *did* follow the applicable school board policies and procedures. *Id.* at \*4-5. *See also Hooker v. Dallas Indep. Sch. Dist.*, 2010 WL 4025877, at \*8 (N.D. Tex. Oct. 13, 2010) (Fitzwater, C.J.) (dismissing § 1983 equal protection claim where plaintiffs failed to allege that they were treated differently from others similarly situated). C.L. has similarly failed to plead that he was treated differently than any other similarly situated student. Accordingly, he cannot make out a violation of his constitutional right to equal protection under the law.[4]

### 3.    Due Process Claim Against Bret Champion[5]

LISD Superintendent Bret Champion alleges he is entitled to qualified immunity on the Plaintiffs' § 1983 claim. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or

---

[4]In light of C.L.'s failure to make out a constitutional violation, the Court need not address whether, even if a constitutional violation had been alleged, Plaintiff has demonstrated that the violation was due to a LISD policy or practice, as required by *Monell*. Had this Court conducted the *Monell* analysis, it would likely have concluded that C.L. has failed to plead the existence of a policy that led to the violation of C.L.'s rights or that any policymaker had knowledge of a custom or practice that posed a threat to C.L.'s constitutional rights and acted with deliberate indifference to that threat.

[5]Plaintiff's counsel stated on the record at the hearing that C.L. is not bringing an equal protection claim against Champion.

9

constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al–Kidd*, 563 U.S. ——, 131 S.Ct. 2074, 2078 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A court may address either prong of this analysis first. *Id.* "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (en banc) (per curiam).

Given the discussion in the prior sections, the analysis here is brief. As just noted, C.L. has not adequately pled the violation of a constitutional right, as no "special relationship" existed between him and LISD. Because C.L. cannot show that Champion violated his constitutional rights, Champion is entitled to qualified immunity on C.L.'s § 1983 claims.[6]

**B.    Disability Claims**

C.L. also claims that LISD failed to accommodate C.L.'s disabilities and modify the bathroom to make it accessible in a safe environment; failed to provide C.L. with assistance in the bathroom; failed to have a safe emergency evacuation plan for C.L.; failed to provide services to C.L. for his deteriorating vision; and failed to provide C.L. homebound services after the assault in the bathroom. Third Amended Complaint at p 24-25.[7]

Section 504 provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving

---

[6]At the hearing Plaintiff's counsel represented to the Court that C.L. was not bringing a Rehabilitation Act/ADA claim or a Title IX claim against Champion. A private right of action for money damages exists against federal funding recipients under Title IX. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999). Champion is not a federal fund recipient.

[7]This description of the disability clais is based in part on clarifications Plaintiff's counsel made at the hearing.

Federal financial assistance. . . ." 29 U.S.C. § 794(a).  The Fifth Circuit reviews § 504 claims under the standard applicable to ADA claims.  *See, e.g., D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010) (citing *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir. 2005) (en banc)).

"To establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate: (1) that she is a qualified individual within the meaning of the ADA; (2) that she was excluded from participation in, or was denied benefits of, services, programs, or activities for which [the school district] is responsible; and (3) that such exclusion or discrimination is because of her disability."  *Greer v. Richardson Indep. Sch. Dist.*, 472 Fed.Appx. 287, 292 (5th Cir. 2012) (unpublished) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)). "The only material difference between the two provisions lies in their respective causation requirements."  *Bennett–Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) (citation omitted).  Section 504 prohibits discrimination "solely by reason" of a disability, whereas the ADA applies even if discrimination is not "the sole reason" for the challenged action.  *Id.*

In addition, "[a] plaintiff asserting a private cause of action for violations of the ADA [and the Rehabilitation Act] . . . may only recover compensatory damages upon a showing of intentional discrimination."  *Delano–Pyle v. Victoria County*, 302 F.3d 567, 575 (5th Cir. 2002) (citing *Carter v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984)).  Discriminatory intent is necessary because the ADA incorporates the Rehabilitation Act's remedies.  *See* 42 U.S.C. § 12133.  In turn, the Rehabilitation Act incorporates the remedies of Title IV of the Civil Rights Act of 1964.  *See* 29 U.S.C. § 794(a); 42 U.S.C. § 2000d.  Under Title IV, and thus under the ADA, compensatory damages are available only where there is "intentional discrimination."  *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 533-34 (1999).

To show disability discrimination in the educational context, "something more than a mere failure to provide the 'free appropriate education' required by [the IDEA] must be shown." *Bennett*, 431 F.3d at 454 (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)).  The plaintiff must show "that a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983).  This may be shown by "facts creating an inference of professional bad faith or gross misjudgment." *Bennett*, 431 F.3d at 455.  Allegations that educational authorities "exercised professional judgment," even mistakenly, do not suffice unless they "depart grossly from accepted standards among educational professionals." *Id.* at 454–55 (quoting *Monahan*, 687 F.2d at 1171).  The ADA and Section 504 "do not create general tort liability for educational malpractice." *Smith ex. rel. Townsend v. Special Sch. Dist. No. 1,* 184 F.3d 764, 769 (8th Cir. 1999).

In a very recent Fifth Circuit case, *Stewart v. Waco Indep. Sch. Dist.*, 711 F.3d 513 (5th Cir. 2013) (Higginbotham J., dissenting), the court went into detail about what is required to state a claim pursuant to Section 504.  In *Stewart*, the plaintiff, who is described in the pleadings as "suffer[ing] from mental retardation, speech impairment, and hearing impairment," attended a public high school in Waco.  She was involved in a sexual encounter with another student in November of 2005.  Afterward, the school district modified her Individualized Education Program providing that she be separated from male students and remain under close supervision while at school.  Despite this, Stewart was involved in three other instances of sexual contact over the next two years – two of which occurred in a bathroom.  Waco ISD failed to modify her IEP in response, nor did it take steps to prevent further abuse.  *Id.* at 513.  The District Court dismissed the case, which included a Rehabilitation Act claim for "gross mismanagement."

12

On appeal, the Fifth Circuit affirmed the dismissal of Stewart's Title IX claims, but reversed and remanded Stewart's Rehabilitation Act claims.  In doing so, it clarified what is required for a Section 504 claim to survive a motion to dismiss.  Given the importance of the issues to this case, it is worth quoting from the decision in some length:

> We begin by clarifying that bad faith or gross misjudgment are just alternative ways to plead the refusal to provide reasonable accommodations, an ambiguity potentially left open by our precedent in this area. . . . In this view, it is immaterial whether the District explicitly refused to make reasonable accommodations; professionally unjustifiable conduct suffices.

> \* \* \*

> Notably, a plaintiff also may plead gross misjudgment by alleging that a school district knew of his disabilities but failed to investigate disability-based discrimination and harassment complaints or to "take appropriate and effective remedial measures once notice of [the] harassment was provided to school authorities."  In sum, a school district refuses reasonable accommodations under § 504 when it fails to exercise professional judgment in response to changing circumstances or new information, even if the district has already provided an accommodation based on an initial exercise of such judgment.

> \* \* \*

> We have likened the effort to provide reasonable accommodations to an exercise in "bilateral cooperation."  The "obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the [plaintiff] asks for a different accommodation or where the [defendant] is aware that the initial accommodation is failing and further accommodation is needed."  Thus, however appropriate the District's initial response, it had an ongoing responsibility to calibrate Stewart's IEP to effectively address the behaviors it intended to prevent by keeping her separated from males and under close supervision.  Under § 504, it is not enough that the District might have discharged its duty under a deliberate-indifference standard by taking remedial—but inadequate—action.  *See M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 982 (8th Cir. 2003) (M.P.I ) (Deliberate indifference "is irrelevant if it can be shown that the District acted in bad faith or with gross misjudgment").  At this early stage, we conclude that even if the District provided Stewart with reasonable accommodations when it initially modified her IEP, the three subsequent instances of alleged sexual abuse could plausibly support a finding that the modifications were actionably ineffective.

*Id.* at 519, 520, 521 (citations omitted).  In sum, a school district refuses reasonable accommodations under § 504 when it fails to exercise professional judgment in response to changing circumstances or new information, even if the district has already provided an accommodation based on an initial exercise of such judgment.

Applying this law to C.L.'s case, he has pled that LISD was notified by C.L.'s parents that he was subjected to bullying and that in 2006 LISD was notified via e-mail by C.L.'s parents that he "was cornered in a boy's bathroom by several boys and it was really traumatic for him." Third Amended Complaint at p. 11.  Additionally, C.L. has pled that his parents reported instances of bullying to the school in "countless e-mails that specified dates and names." *Id.*  C.L. pleads that his parents presented a list of all the acts of bullying that occurred in Debbie Johnson's classroom to the ARD committee and that no action was taken.  And generally, C.L. pleads that his parents were reassured that certain bullies would be kept away from C.L. and LISD continued to send these children into the bathroom with C.L. without adult supervision despite knowing about his inability to close the bathroom door and inability to urinate without pulling down his pants. *Id.* at 15.

Applying *Stewart*, C.L. has stated a plausible claim that LISD committed gross misjudgment. C.L. has pled that LISD knew of his disabilities but failed to investigate disability-based discrimination and harassment complaints or to "take appropriate and effective remedial measures once notice of [the] harassment was provided to school authorities." *M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 439 F.3d 865, 868 (8th Cir.2006).  Dismissal of C.L.'s Rehabilitation Act and ADA claims is therefore not appropriate.

### C.    Title IX Claims

Title IX states: "No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance."

14

20 U.S.C. § 1681(a).  Title IX seeks to prevent gender-based student on student harassment,. "Same-sex sexual harassment is actionable under Title IX." *Sanches v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011).  A school district recipient of federal funds may be liable for student on student harassment where: (1) the school district has actual knowledge of the harassment; (2) the harasser is under the school district's control; (3) the harassment is based on the victim's sex; (4) the harassment is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit"; and (5) the school district is deliberately indifferent to the harassment. *Id.*  For offensive conduct to be considered "based on sex" for purposes of Title IX, the conduct must be more than "merely tinged with offensive sexual connotations." *Id.*

C.L. alleges that LISD knew or should have known about the sexual harassment going on in the bathroom because C.L. was also bullied in the classroom where the teacher was present.  Third Amended Complaint at p. 26.[8]  C.L. also alleges his mother sent an e-mail in 2006 stating that C.L. was assaulted and bullied in the bathroom, and had sent numerous e-mails over a four year period informing LISD of continued ongoing bullying.  *Id.*

The *Stewart* case specifically addresses the standard applicable in a Title IX case of student-on-student sexual harassment.  711 F.3d 513.  In *Stewart*, the Court held that the plaintiff could not bring a Title IX claim against Waco ISD.  *Id.  Stewart* clarifies that Plaintiffs may premise a Title IX claim against a school district based on student-on-student sexual harassment where the district

---

[8]Once again, C.L. misstates the appropriate standard.  This claim requires proof of *actual* knowledge to prevail.  In *Davis*, the Supreme Court referred to its prior opinion in *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 283 (1998), when it stated that in imposing Title IX liability "we declined the invitation to impose liability under what amounted to a negligence standard—holding the district liable for its failure to react to teacher-student harassment of which it knew or *should have known.*" [emphasis added].

"acts with deliberate indifference to known acts of harassment in its programs or activities." *Id.* at 519 (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641 (1999)) (noting that this "hold[s] the [state actor] liable for its own decision to remain idle in the face of known student-on-student [sexual] harassment in its schools").

This standard is exceedingly high.  "Deliberate indifference is an extremely high standard to meet" in and of itself. *Domino v. Tex. Dep't. of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It "generally requires that a plaintiff demonstrate at least a pattern of similar violations." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). A discrimination claim based on student-on-student harassment requires even more: the "action will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633.  That is, a school district's "response to the harassment or lack thereof [must be] clearly unreasonable in light of the known circumstances," *id.* at 648, such that the district's actions subjects the victim to further discrimination.  *Id.* at 649; *see also Williams v. Bd. of Regents*, 477 F.3d 1282, 1296 (11th Cir. 2007) (holding that *Davis* requires plaintiffs to "allege that the Title IX recipient's deliberate indifference to the initial discrimination subjected the plaintiff to further discrimination," an element not present in pleading deliberate indifference in municipal-liability cases).

 C.L. has failed to plead "deliberate indifference" sufficiently for his Title IX claim to survive dismissal.  "In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law." *Davis,* 526 U.S. at 650.  In *Stewart*, the Court explains "the gross-misjudgment inquiry borrows from deliberate-indifference doctrine. We emphasize, however, that the two theories are distinct." 711 F.3d at 520.  The Court further explicated that "[d]eliberate

16

indifference applies here only with respect to the District's alleged liability for student-on-student harassment under a Title IX-like theory of disability discrimination." *Id.* (citations omitted).  In this case, C.L has failed to plead that LISD knew of any other instances where he or another student was *sexually* harassed.  Instead, all of the complaints alleged bullying generally, and although one of those took place in the bathroom, it was *not* alleged to have involved sexual conduct.  These facts—even if assumed to be true—are insufficient to reach the "exceedingly high" standard set by the courts to hold a school district liable under Title IX for student-on-student sexual conduct.  C.L.'s Title IX claim should therefore be dismissed.

D.   **Individual Claims Against LISD Superintendent Champion**

Plaintiff also sues Champion in his individual capacity under Texas law for actions C.L. alleges Champion took within the scope of his employment with LISD.  Third Amended Complaint at p. 5.  Plaintiff alleges that, as LISD Superintendent, Champion "is responsible for the administration of education and the assurance of the implementation of protections afforded students with disabilities to be free from retaliation, harassment, interference, and discrimination due to status of disability for C.L."  In response, Champion alleges he is entitled to professional immunity and governmental immunity under Texas law for these claims.

The Texas legislature has recognized a public school employee's immunity from suit. *Johnson v. Calhoun County Indep. Sch. Dist.*, 943 S.W.2d 496, 498 (Tex. App. – Corpus Christi 1997, writ denied). According to the Texas Education Code:

> A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

17

TEX. EDUC. CODE ANN. § 22.0511(a).  Professional employees of a school district are immune from claims for conduct incident to or within the course and scope of their employment unless it involves the use or operation of a motor vehicle or excessive or negligent discipline resulting in injury.  TEX. EDUC. CODE ANN. §22.0511.  Champion, as superintendent, is a "professional employee" of LISD within the meaning of the statute.  TEX. EDUC. CODE ANN. §§ 22.051, 22.0511.

Governmental immunity protects a school district from lawsuits and liability for money damages. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008).  A governmental entity, including a school district, cannot be sued without its consent. *Id.* at 655.  A governmental entity's employee, acting within the course and scope of his employment, has the same immunity as the governmental entity.  *City of N. Richland Hills v. Friend*, 370 S.W.3d 369, 373 (Tex. 2012) ("The doctrine of governmental immunity protects the public fisc by prohibiting suits against governmental units (or their employees acting within the scope of their employment) except in narrow circumstances prescribed by statute.").  Thus C.L.'s claims against Champion are barred by governmental immunity.

## III.  RECOMMENDATIONS

For the reasons set forth above, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be GRANTED IN PART AND DENIED IN PART. The Court **RECOMMENDS** that the motion be DENIED as to Plaintiffs' Section 504 and ADA claims against LISD and GRANTED as to all other claims by Plaintiffs against both LISD and Champion.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are

18

being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 4th day of June, 2013.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE