**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **C.L. BY NEXT FRIENDS AND** | § | |
| **GUARDIANS, R.L. AND E.L.** | § | |
| | § | |
| **v.** | § | **A-12-CA-589 LY** |
| | § | |
| **LEANDER INDEPENDENT SCHOOL** | § | |
| **DISTRICT, et al.** | § | |

**SUPPLEMENT TO REPORT AND RECOMMENDATION**
**AFTER RE-REFERRAL**

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

This matter is before the Court on the re-referral of the case to the undersigned by Judge

Yeakel.  On June 4, 2013, the undersigned issued a Report and Recommendation on the Motion to

Dismiss of Defendants Leander I.S.D. and Bret Champion (Dkt. No. 6).   The motion to dismiss

addressed a number of claims.   On Plaintiffs' claim made under the ADA and § 504 of the

Rehabilitation Act, the Court relied in part on the panel opinion in *Stewart v. Waco Indep. Sch. Dist.*,

711 F.3d 513 (5th Cir. 2013), in concluding that Plaintiffs had adequately stated a claim that

survived the motion to dismiss.  Unbeknownst to the Court, the day before, on June 3, 2013, the

panel in that case granted a motion for rehearing, withdrew its opinion, and remanded the case to the

district court for a ruling on whether the § 504 claim there was barred for failure to exhaust or was

untimely.  *Stewart v. Waco Independent School Dist.*, — F. App'x —, 2013 WL 2398860 (5th Cir.

June 3, 2013).  As a result, the holdings in *Stewart*, relied on in the Report and Recommendation,

have been withdrawn.  Based on these events, on June 26, 2013, Judge Yeakel referred the motion

to dismiss back to the undersigned to consider the impact of the Fifth Circuit's actions in *Stewart*

on the recommendations made in the Report and Recommendation.  The undersigned therefore submits this Supplement to address that issue.

## I.      Findings not affected by the withdrawal of the *Stewart* opinion

Before addressing the *Stewart* case, the Court briefly notes that the bulk of the Report and Recommendation pertained to claims that are in no way impacted by the withdrawal of the *Stewart* opinion.  The parties have already filed their objections to the Report and Recommendation on these issues, and the undersigned will leave those sections of the Report and Recommendation untouched. The only portion of the Report and Recommendation that is impacted by the Fifth Circuit's actions in *Stewart* is Section II.B, found at pages 10-14 of the Report and Recommendation.  The remainder of the Report and Recommendation is therefore not amended by this Supplement, and has already been objected to by the parties.  That portion of the Report and Recommendation is therefore ripe for review by the district judge.

## II.     Withdrawal of section II.B

Based on the Circuit's withdrawal of the decision in *Stewart*, the Court hereby withdraws Section II.B of the Report and Recommendation dated June 4, 2013 (Dkt. No. 41), and in its place submits the following:

### B.      Disability Claims

C.L. also brings a claim under the ADA and § 504 of the Rehabilitation Act, alleging that LISD failed to accommodate C.L.'s disabilities in several respects.  Based on the allegations of the Third Amended Complaint, as explained and clarified by C.L.'s counsel at the hearing on the motion to dismiss, C.L. is asserting that LISD failed to modify the bathroom to make it accessible in a safe environment, failed to provide C.L. with assistance in the bathroom, failed to have a safe emergency

evacuation plan for C.L., failed to provide services to C.L. for his deteriorating vision, and failed to provide C.L. homebound services after the assault in the bathroom.[1]

Section 504 provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). The Fifth Circuit reviews § 504 claims under the standard applicable to ADA claims. *See, e.g., D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010) (citing *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir. 2005) (en banc)).

"To establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate: (1) that she is a qualified individual within the meaning of the ADA; (2) that she was excluded from participation in, or was denied benefits of, services, programs, or activities for which [the school district] is responsible; and (3) that such exclusion or discrimination is because of her disability." *Greer v. Richardson Indep. Sch. Dist.*, 472 Fed.Appx. 287, 292 (5th Cir. 2012) (unpublished) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)). "The only material difference between the two provisions lies in their respective causation requirements." *Bennett–Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) (citation

---

[1] LISD has asserted that C.L.'s disability claims are foreclosed by the settlement of a prior IDEA proceeding. Defendants' Reply (Dkt. No. 10). Plaintiff disputes this and cites portions of the Settlement Agreement which explicitly preserved C.L.'s right to file a federal lawsuit raising the very claims at issue here. (Dkt. No. 46). The determination of which claims were released in that proceeding, and which were preserved, is a question dependent on the language of the parties' Settlement Agreement, and potentially other evidence, and is thus not appropriate for resolution on a 12(b)(6) motion.

omitted).  Section 504 prohibits discrimination "solely by reason" of a disability, whereas the ADA

applies even if discrimination is not "the sole reason" for the challenged action.  *Id.*

   "A plaintiff asserting a private cause of action for violations of the ADA [and the

Rehabilitation Act] . . . may only recover compensatory damages upon a showing of intentional

discrimination."  *Delano–Pyle v. Victoria County*, 302 F.3d 567, 575 (5th Cir. 2002) (citing *Carter

v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984)).  Discriminatory intent is necessary

because the ADA incorporates the Rehabilitation Act's remedies.  *See* 42 U.S.C. § 12133.  In turn,

the Rehabilitation Act incorporates the remedies of Title IV of the Civil Rights Act of 1964.  *See*

29 U.S.C. § 794(a); 42 U.S.C. § 2000d.  Under Title IV, and thus under the ADA, compensatory

damages are available only where there is "intentional discrimination." *Kolstad v. Am. Dental Ass'n*,

527 U.S. 526, 533-34 (1999).

   To show disability discrimination in the educational context, "something more than a mere

failure to provide the 'free appropriate education' required by [the IDEA] must be shown."  *Bennett*,

431 F.3d  at 454 (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)).  The

plaintiff must show "that a school district has refused to provide reasonable accommodations for the

handicapped plaintiff to receive the full benefits of the school program."  *Marvin H. v. Austin Indep.

Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983).  The Fifth Circuit has explicitly adopted the holding

in *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982), and found that "facts creating an

inference of professional bad faith or gross misjudgment" are necessary to substantiate a cause of

action for intentional discrimination under § 504 or ADA against a school district predicated on a

disagreement over compliance with the IDEA. *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629

F.3d 450, 454 (5th Cir. 2010); *Bennett*, 431 F.3d  at 455.  Allegations that educational authorities

"exercised professional judgment," even mistakenly, do not suffice unless they "depart grossly from

4

accepted standards among educational professionals." *Bennett,* 431 F.*3*d at 454–55 (quoting *Monahan*, 687 F.2d at 1171). The ADA and Section 504 "do not create general tort liability for educational malpractice." *D.A.,* 629 F.3d at 454; *Smith ex. rel. Townsend v. Special Sch. Dist. No. 1,* 184 F.3d 764, 769 (8th Cir. 1999).

There is room for disagreement regarding the proper standard to apply when a claim such as C.L.'s is brought against a school district, a claim that is ultimately predicated on demonstrating that the school district refused to grant a disabled student's request for a reasonable accommodation. The first possibility is requiring the plaintiff to demonstrate that the district engaged in "gross misjudgment" in failing to accommodate the plaintiff's disabilities. The second approach is to require that the plaintiff prove the district acted with "deliberate indifference" in its actions. This was the focus of the disagreement between Judges Haynes and Elrod, on the one hand, and Judge Higginbotham on the other in *Stewart v. Waco Indep. Sch. Dist.*, 711 F.3d 513 (5th Cir.), *vacated* — Fed.Appx. —, 2013 WL 2398860 (5th Cir. June 3, 2013). Prior to the order remanding the case, the majority on the panel wrote at some length to clarify the standard, "[g]iven the dearth of case law directly addressing this issue." 711 F.3d at 513. In dissenting, Judge Higginbotham disagreed with the majority's conclusion that a "refusal" to adopt a reasonable accommodation could be demonstrated by "gross misjudgment," as that standard is akin to something far less than a refusal—something like oversight or negligence. *Id.* at 536 (Higginbotham, J. dissenting). Although it is not clear from the subsequent (unanimous) panel decision to vacate the opinion and remand the case, the panel apparently decided to postpone their discussion until it was clear that there was not some other procedural defect (such as failure to exhaust) that might obviate the need to decide the question. The unfortunate byproduct of that delay is a less-than-clear state of the law for trial courts to apply in the meantime.

Thankfully, the slate was not clean on this issue, as there are several precedents from the Fifth Circuit that have considered this issue. In reaching its conclusion in *Stewart* that "gross misjudgment" was the proper standard, the panel majority relied on existing Fifth Circuit precedents, and particularly *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.* Indeed, in remanding the case, the panel stated that:

> Should the district court ultimately consider the merits, we note that such consideration should be pursued in light of our prior precedents, *see, e.g., D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir.2010), albeit the reading of which produced a division in the now-vacated opinion which we do not here resolve.

2013 WL 2398860 at *1. As noted earlier, in *D.A.* the Fifth Circuit quoted from and adopted the Eighth Circuit's approach in *Monahan* in concluding that "gross misjudgment" was the proper standard to apply in a § 504 case in the educational context. The *D.A.* court explicitly recognized that the Fifth Circuit had long held that a plaintiff pursing an ADA or § 504 claim for failure to accommodate must show the school district "refused" to adopt the accommodation, but found it nonetheless appropriate to apply a bad faith or gross misjudgment standard in making that determination. 629 F.3d at 454-55. *D.A.* has not been overruled, and remains the law. Thus, while the Court recognizes that there can be disagreement on this issue, it will apply the "gross misjudgment" standard in reviewing the motion to dismiss this claim.[2]

---

[2]It is clear that the majority in *Stewart* reached this very same conclusion—that it was bound by a prior circuit precedent—when it responded to the dissent's criticism that their opinion had set too low a standard, stating "that is an issue over which this panel has no control given *D.A.*'s prior endorsement of *Monahan*." 711 F.3d at 524 n.14. In his dissent, while Judge Higginbotham disagrees with the majority's reading of *D.A.*, he fails to offer an alternative reading, but rather appears to effectively be arguing that *D.A.* be overruled. *Id.* at 535-36 (Higgonbotham, J. dissenting).

C.L. has pled that LISD was notified by C.L.'s parents that he was subjected to bullying and that in 2006 LISD was notified via e-mail by C.L.'s parents that he "was cornered in a boy's bathroom by several boys and it was really traumatic for him." Third Amended Complaint at p. 11. Additionally, C.L. has pled that his parents reported instances of bullying to the school in "countless e-mails that specified dates and names." *Id.* C.L. pleads that his parents presented a list of all the acts of bullying that occurred in Debbie Johnson's classroom to the ARD committee and that no action was taken. C.L. also pleads that his parents were reassured that certain bullies would be kept away from C.L. and LISD continued to send these children into the bathroom with C.L. without adult supervision despite knowing about his inability to close the bathroom door and inability to urinate without pulling down his pants. *Id.* at 15. These facts state a plausible claim that LISD committed gross misjudgment in dealing with C.L. C.L. has pled that LISD knew of his disabilities but failed to investigate disability-based discrimination and harassment complaints or to "take appropriate and effective remedial measures once notice of [the] harassment was provided to school authorities." *M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 439 F.3d 865, 868 (8th Cir. 2006). Dismissal of C.L.'s Rehabilitation Act and ADA claims is therefore not appropriate at this juncture.

Finally, LISD contends that it cannot be held liable because C.L. never made an outcry of *sexual* harassment until the incident that led him to leave the school, and thus it was not on notice of a need to make accommodations that might have prevented the abuse. As noted, C.L. has alleged that there were ongoing complaints by his parents regarding mistreatment and bullying by C.L.'s classmates that was taking place in the bathroom. The fact that the bullying eventually escalated to *sexual* acts is indicative of the continued power imbalance between C.L. and his nine and ten year old classmates, and does not qualitatively change LISD's responsibilities for the purposes of this Court's legal analysis. To put it another way, the abuse C.L. alleges in 2010 was, for all intents and

purposes, a more grievous form of the bullying about which C.L. alleges he complained beginning in 2006.  Thus, the fact that the prior complaints of mistreatment in the bathroom had not involved anything sexual in nature does not mean that LISD was not on notice of the risk of harm to C.L. if it refused to make appropriate modifications to accommodate him in the bathroom.

For these reasons, the Court will recommend that the Motion to Dismiss be denied with respect to C.L.'s claims under § 504 of the Rehabilitation Act and under the ADA.

## III.  RECOMMENDATION

For the reasons set forth above, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART.** The Court **RECOMMENDS** that the motion be **DENIED** as to Plaintiffs' Section 504 and ADA claims against LISD and **GRANTED** as to all other claims by Plaintiffs against both LISD and Champion.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.[3]  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and

---

[3]As noted above, this Supplement to the prior Report and Recommendation only addresses Plaintiffs' Section 504 and ADA claims against LISD and the undersigned has not altered the findings and recommendations made in the original Report and Recommendation.  Because the parties have already made objections to the original Report and Recommendation, they need only file objections to the findings and recommendations made in this supplement.

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 23rd day of July, 2013.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE