**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **C.L. BY NEXT FRIENDS AND** | § | |
| **GUARDIANS, R.L. AND E.L.** | § | |
| | § | |
| **v.** | § | **A-12-CA-589 LY** |
| | § | |
| **LEANDER INDEPENDENT SCHOOL** | § | |
| **DISTRICT, et al.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant's Motion Summary Judgment (Dkt. No. 69) filed September 13, 2013; Plaintiff's Response (Dkt. No. 70) filed September 27, 2013; Plaintiff's Supplemental Exhibits Missing from Response (Dkt. No. 71) filed September 27, 2013; and Defendant's Reply and Objections (Dkt. No. 72) filed October 3, 2013. The District Court referred these Motions to the undersigned Magistrate Judge for report and recommendation.

## I. BACKGROUND

Minor Plaintiff C.L. is classified as legally blind and is autistic. *See* Third Amended Complaint at p. 2. C.L. attended Leander Independent School District ("LISD") where he was accepted as a child with a disability pursuant to the Rehabilitation Act and the Americans with Disabilities Act. *Id.*

Plaintiff alleges in his Third Amended Complaint that for over four years, from September 2006, to December 2010, his parents reported to LISD known incidences of bullying, threats and potential battery by C.L.'s peers. *Id.* C.L. contends that despite these reports, LISD required C.L.

to use the bathroom unsupervised, with the boys known to bully him.[1]  On December 15, 2010, while a fourth grader at Mason Elementary in LISD,  C.L. reported to his therapist that he was forced to use the restroom even when he did not have to go; that the bullies would yank him out of the stall when his pants were down and make him stroke and fondle his penis; and that one of the boys grasped C.L.'s penis and began stroking it back and forth stating "I will show you how to do it."  *Id.* at p. 2-3. After his outcry, C.L.'s parents reported this information to LISD.  *Id.* at p. 2.[2]

On January 4, 2011, fifteen boys were interviewed by LISD and the Cedar Park Police. Defendant's Ex. 2, Affidavit of Jamie Klassen at p. 3-4.  No charges or juvenile proceedings were initiated as a result of this investigation.   Eventually, C.L.'s parents engaged in three Admission Review and Dismissal proceedings with LISD.  C.L.'s parents were dissatisfied with the outcomes of these meetings and they removed C.L. from school.  After his withdrawal from Mason, C.L.'s parents requested a Due Process Hearing from the Texas Education Agency under the Individuals with Disabilities Education Act ('IDEA"). Defendant's Ex. 1 at ¶ 7. C.L. never returned to LISD and instead was enrolled in a private school.  As part of a settlement of C.L.'s IDEA claims, LISD paid the equivalent of two years of C.L.'s tuition at the private school. Defendant's Ex. 1 at ¶ 7.

C.L. alleged that LISD failed to provide C.L. with an appropriate environment in which he could obtain an education, forcing him to a private school, in violation of his civil rights.   He brought claims pursuant to 42 U.S.C. § 1983 for violations of the Fifth and Fourteenth Amendments to the Constitution violations of Title IX of the Education Amendments of 1972, violations of § 504

---

[1]C.L. alleges that it was known to LISD that C.L. could not close the stall door and could not use the restroom without pulling his pants the entire way down.

[2]It is not clear from the summary judgment evidence precisely when the bathroom events are alleged to have taken place, but it appears that it was no more than some number of days prior to C.L.'s report.

of the Rehabilitation Act of 1973 (29 U.S.C. § 794(a)), and violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.  He also brought state law tort claims against various LISD staff and administration.

Upon report and recommendation by the undersigned Magistrate Judge the District Judge dismissed all of C.L.'s claims against all parties, with the exception of his claims against LISD brought pursuant to § 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act. Defendant LISD now moves for summary judgment on these remaining discrimination claims.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008). If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. *See Hines v. Henson*, 293 F. App'x 261, 262 (5th Cir. 2008) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004)).  Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III.  ANALYSIS

LISD contends that Plaintiff cannot establish that he was intentionally discriminated against based upon his disability because he has failed to produce any evidence of bad faith or gross misjudgment.  LISD asserts that the summary judgment evidence shows that LISD and its employees properly exercised professional discretion and judgment to reasonably accommodate C.L. during his enrollment at LISD.  Plaintiff responds that fact issues exist  precluding summary judgment.  C.L. maintains that his mother continually apprised LISD employees of a 2006 incident that had occurred in the bathroom while C.L. was in kindergarten,  C.L.'s difficulties while using the bathroom, and the bullying of C.L., but LISD failed to adequately respond.

### A.     Section 504/ADA Legal Standards

Section 504 provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).  The Fifth Circuit reviews § 504 claims under the standard applicable to ADA claims.  *See, e.g., D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010) (citing *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir. 2005) (en banc)).  "To establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate: (1) that she is a qualified individual within the meaning of the ADA; (2) that she was excluded from participation in, or was denied benefits of, services, programs, or activities for which [the school district] is responsible; and (3) that such exclusion or discrimination is because of her disability." *Greer v. Richardson Indep. Sch. Dist.*, 472 Fed. Appx. 287, 292 (5th Cir. 2012) (unpublished) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)). "The only material difference between the two provisions lies in their respective causation

4

requirements." *Bennett–Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) (citation omitted). Section 504 prohibits discrimination "solely by reason" of a disability, whereas the ADA applies even if discrimination is not "the sole reason" for the challenged action. *Id.*

In addition, "[a] plaintiff asserting a private cause of action for violations of the ADA [and the Rehabilitation Act] . . . may only recover compensatory damages upon a showing of intentional discrimination." *Delano–Pyle v. Victoria County*, 302 F.3d 567, 575 (5th Cir. 2002) (citing *Carter v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984)). Discriminatory intent is necessary because the ADA incorporates the Rehabilitation Act's remedies. *See* 42 U.S.C. § 12133. In turn, the Rehabilitation Act incorporates the remedies of Title IV of the Civil Rights Act of 1964. *See* 29 U.S.C. § 794(a); 42 U.S.C. § 2000d. Under Title IV, and thus under the ADA, compensatory damages are available only where there is "intentional discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 533-34 (1999).

To show disability discrimination in the educational context, "something more than a mere failure to provide the 'free appropriate education' required by [the IDEA] must be shown." *Bennett*, 431 F.3d at 454 (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)). The plaintiff must show "that a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983). The Fifth Circuit has explicitly adopted the holding in *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982), and found that "facts creating an inference of professional bad faith or gross misjudgment" are necessary to substantiate a cause of action for intentional discrimination under § 504 or ADA against a school district. *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010); *Bennett*, 431 F.3d at 455. Allegations that educational authorities "exercised professional judgment," even mistakenly, do not

5

suffice unless they "depart grossly from accepted standards among educational professionals." *Bennett,* 431 F.*3*d at 454–55 (quoting *Monahan,* 687 F.2d at 1171).  The ADA and Section 504 "do not create general tort liability for educational malpractice."  *D.A.,*  629 F.3d at 454; *Smith ex. rel. Townsend v. Special Sch. Dist. No. 1,* 184 F.3d 764, 769 (8th Cir. 1999).

There are few Fifth Circuit cases applying the gross misjudgment standard.  Accordingly, the Court looks outside the Circuit for guidance.  *M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 439 F.3d 865, 868 (8th Cir. 2006) (M.P. II), holds that a plaintiff may plead gross misjudgment by alleging that a school district knew of his disabilities but failed to investigate disability-based discrimination and harassment complaints or to "take appropriate and effective remedial measures once notice of [the] harassment was provided to school authorities."

As noted earlier, when it addressed the Defendants' Motion to Dismiss the Court found that Plaintiff had sufficiently pled gross mismanagement in the educational context pursuant to § 504 and the ADA.  The Court's focus at this stage is whether the Plaintiff has been able to present summary judgment evidence sufficient to support the claims that are pled in his Third Amended Complaint. In Paragraph Three of his Complaint, C.L. relies upon and lists the dates his mother sent e-mails to LISD notifying LISD of various instances of C.L. being bullied by students. In its motion, Defendant asserts that some of these communications never took place, or their contents were misrepresented by Plaintiff, and asserts that, taken as a whole, Plaintiff's evidence is insufficient to  establish that there are any fact questions remaining on the issue of professional bad faith or gross misjudgment.

### B.    Summary Judgment Evidence

On December 15, 2010, fourth-grader C.L. reported to his therapist that he had previously been assaulted in the boys' bathroom of his school.  Complaint at p. 2. Plaintiff asserts that he was bullied into masturbating in front of other boys, and that another boy touched his penis. *Id.* at p. 3.

LISD offers evidence that it investigated the incident along with the Cedar Park Police Department. Affidavit of Bret Champion, Defendant's Ex. 1 at p. 10. Neither LISD nor the police concluded that a sexual assault occurred, although LISD concluded that bullying had occurred. *Id.* Various students reported that they had teased or witnessed teasing of C.L. for pulling his pants all the way down while urinating. *Id.* LISD disciplined the students who were identified as having teased or bullied C.L. *Id.*

Plaintiff argues that prior to these incidents in December 2010, C.L.'s mother, E.L., notified LISD of numerous incidents of C.L.'s harassment by other students, but that LISD failed to adequately respond to the harassment of C.L. In her Affidavit, E.L. states that in an e-mail dated September 26, 2006, she notified C.L.'s kindergarten teacher Debbie Johnson and vice principal Evelyn Crisp that C.L. was cornered in a boy's bathroom and that it was "traumatic" for him. The e-mail is appended as Defendant's Ex. 7 to E.L.'s deposition, Defendant's Ex. 6B. The e-mail opens with a note that C.L. will miss school due to illness, and then goes on to complain that a girl has been hitting and punching C.L., despite the teacher's warnings. It then states, "We're really concerned about this because at the end of last year [kindergarten], [C.L.] was cornered in a boys bathroom by several boys and it was really traumatic for him." In her deposition, E.L. described the kindergarten incident as "he was at the urinal, and while his pants were down, a couple of boys slapped him on the bottom, and laughed, and ran out." E.L. Depo. at p. 106. She further testified that she called the teacher and the principal at that time, Paul Smith, who said he would talk to the teacher. Ultimately the decision was made that C.L. would use the bathroom stall and not the urinal from that point forward. *Id.* at p. 109. E.L. testified that the teacher told her the offending boys had been reprimanded. *Id.* p. 124. She testified that this was the first time she reported any mistreatment of C.L. to LISD. *Id.* at p. 114.

The next notification Plaintiff relies upon is an April 9, 2007 letter to then co-principals Paul Smith and Jamie Klassen along with ARD Coordinator Jennifer Fleming. Ex. 8 to E.L. Deposition. In this letter, C.L.'s parents question LISD's educational diagnosis and discuss information they submitted to the ARD Committee to establish that C.L. qualifies as a child with Autistic Disorder. The letter states that the parents believe that a classroom evaluation completed by the teacher Debbie Johnson, was compromised, and state that "It should be noted that [C.L.] had two very traumatic situation [sic] happen in her classroom which took weeks to identify in each case. In both cases, the teacher was not the one who informed us, the parents, of what happened." In her deposition, E.L. acknowledged that these two incidents were the bathroom incident and hitting incident referenced in the September 26, 2006 e-mail. E.L. Depo. at p. 113-117.

The next report upon which Plaintiff relies is an October 19, 2007, e-mail sent to C.L.'s first grade teacher complaining that other first graders, two girls and a boy, were bullying C.L. by "calling him names, making fun of him, laughing at him and making funny noises at him." Ex. 9 to E.L. Depo. Additionally, C.L. had reported that two students had "canceled" him as a friend, and that another student grabbed C.L. by the hand to push him away or drag him along when he walked too slowly. E.L. expressed concern over the escalating bullying and requested the opportunity to talk to the class and explain Asperger's Syndrome. Principal Jamie Klassen agreed to meet with E.L. and C.L.'s teacher to discuss the issue. *Id.*

The next evidence offered by Plaintiff is an e-mail initiated by Jessica LeBlond, dated February 9, 2010, and introducing herself to E.L. as the new parent liaison for LISD. Ex. 10 to E.L. Depo. E.L. responds to the introduction by describing that the last parent liaison was non-responsive to her attempts to contact her and describes her disappointment and depression. E.L. does not discuss any bullying of C.L.

8

Next, Plaintiff's submits an e-mail dated May 14, 2010, which was the end of C.L.'s third grade year. Ex. 11 to E.L. Depo. There, E.L. writes to Ms. Masi., C.L.'s third grade teacher, to complain of an incident where the nurse called her relating that C.L. was injured in a "domino injury" where a line of students fell into each other.  E.L. stated that C.L. had reported that in fact another student had punched him in the forehead.  Her e-mail stated that she had talked to the teacher and learned a child had been reprimanded.  The teacher reported that she and the assistant principal held a class meeting about respecting personal space and consequences for behavior. E.L. expressed her concerns with bullying, and wanted to know if the child who punched C.L. had been reprimanded.  Principal Klassen responded that the other student's parents had been contacted and the matter discussed. *Id.*

Plaintiff relies next on an e-mail from E.L. to ARD facilitator Jennifer Brumley dated May 24, 2010.  Ex. 12 to E.L. Depo. In that e-mail, E.L. discusses C.L.'s failure of the TAKS test, and expresses concern that C.L.'s learning disabilities are not being properly addressed, and states that C.L.'s autism and learning disabilities seem to be worsening.  At the end of the letter she states, "We would also like to discuss the ongoing 'bullying' that seems to follow our son. Specifically, what safeguards are in place at Mason to protect C.L.?" *Id.*   The e-mail references the May 14, 2010 incident, but does not assert another instance of bullying.  The next day, May 25, 2010, E.L. sent an e-mail to principal Klassen complaining about C.L.'s teacher and how he was unfairly reprimanded. Ex. 13 to E.L. Depo. In this incident, when the class was lined up, C.L. lost his balance and touched another child.  That child said "If you touch me one more time,  I'm going to hit you in the face!" The child told the teacher that C.L. touched her, who reportedly reprimanded C.L.  E.L. reported that she had to give her son anti-anxiety medication because of the incident. E.L. stated  in her e-mail "Bottom lime [sic]? My son does not feel safe at Mason. We now KNOW he's not safe. He's

certainly not protected. . . . I'd like to discuss options for the remaining days of this school year since there are so few left " *Id.* No physical assault was discussed in the e-mail.

In an e-mail to Jamie Klassen and Jennifer Bromley dated June 1, 2010, E.L. reported that on a Saturday afternoon, a crank call had been placed to her cell phone number where the caller asked for C.L. and then stated it was his "girlfriend" calling. Ex. 14 to E.L. Depo. In the e-mail, E.L. states "we're just very confused and scared about this growing threat to our son." *Id.* Principal Klassen responded that, because the incident occurred on the weekend and at home, it is outside the school's jurisdiction. Klassen offered to contact the parents of the students involved and let them know that E.L. would like to speak to them. *Id.* Klassen spoke to the parents of the child involved, who called E.L. and she reported that they had a "very pleasant conversation." Ex. 15 to E.L. Depo.

In the next e-mail upon which Plaintiff relies, dated June 2, 2010, E.L. complains that C.L. was placed in line next to the child involved in the May 25, 2010 e-mail incident.   Ex. 15 to E.L. Depo. C.L. once again touched the child, and the child stated "If you touch me again, I'm going to hit you or step on you!" C.L. reported the incident to the teacher, who told the other child not to say mean things and told C.L. not to touch others. E.L. complained that she was not called and had been told that C.L. would not be placed in line next to this particular child. *Id.* C.L.'s third grade teacher, Vanessa Masiakowski testified that she had told E.L. that she would keep C.L. separated from certain children, but that meant she did not seat them together in the classroom or place them in the same math or reading groups. Plaintiff's Ex. 2-B, Masiakowski Depo. At p. 14. She testified that she did not place the children in a particular line order. *Id.* Principal Jamie Klassen states in her affidavit, that when the second incident of harsh words to C.L. from the same student was reported to her by E.L., Klassen had Assistant Principal Hill follow up.  Hill found incidental contact by C.L. and a

disproportional response by the student. Ms. Hill had the counselor visit with the other student about creating personal space without conflict. Klassen Affidavit at p. 4.

On December 14, 2010, E.L. e-mailed Mindy Kutac, C.L.'s fourth grade teacher, and Linda Hart, C.L.'s special education inclusion teacher.  Ex. 16 to E.L. Depo.  This e-mail chronicles C.L.'s missed school due to illness, excessive makeup work, stress about completing his makeup work, stress over his grades, and stress about school in general.  *Id.*  The e-mail does not address bullying. A responsive e-mail from Ms. Kutac assures E.L. that she will give C.L. the time he needs to makeup any work and offers to help him with any materials missed in class. She ends the e-mail with "please keep me up to date on how I can help him." *Id.*

On December 15, 2010, E.L. called principal Jamie Klassen to report the bathroom incident. E.L. testified that she was unaware until December 15, 2010, that C.L. had been sexually assaulted in the bathroom. E.L. Depo. at p. 214. After Klassen was notified by E.L. of the alleged incident, she initiated steps to investigate the incident. Klassen Affidavit at p. 5. After law enforcement had finished interviewing students, Klassen and Assistant Principal Sally Hill interviewed 15 students about the allegations that C.L. had been abused in the bathroom. The reports from the students ranged from seeing nothing, to reports of laughing at C.L. when seeing him with his pants all the way down. *Id.* at p. 6. None of the students indicated they witnessed any physical touching of C.L. Hill confirmed that one student had teased C.L. in the bathroom on more than one occasion and it was found that that student had engaged in bullying.  He was given three days of in school suspension and imposed a "stay away" agreement requiring that student to not be in the same class as C.L., and to stay away from C.L. at lunch and recess.  *Id.*  That student was required to use the nurse's restroom and C.L. was offered the use of an adult private restroom.  *Id.*  This "stay away" agreement was never implemented because C.L. never returned to school at Mason. *Id.*

Law enforcement informed LISD that they did not intend to seek any charges because no sort of sexual activity had been confirmed. *Id.* at p. 5.

### C.   Argument

LISD argues that the summary judgment evidence detailed above is insufficient to put a reasonable educator on notice that C.L. was likely to be sexually assaulted in the bathroom. LISD asserts that there is no evidence of complaints about bullying in the fall semester of C.L.'s fourth grade year. Additionally, LISD points out, only three of the e-mails, spanning over four years, include allegations of physical contact. Of those three e-mails, two occurred in kindergarten and one in third grade, after which the teacher and vice principal held a meeting with C.L.'s class discussing the consequences of such behavior.  LISD points out that Plaintiff's Third Amended Complaint has overstated both the magnitude and number of conflicts preceding the incident reported on December 15, 2010.

Plaintiff argues that the facts support an inference of professional bad faith and/or gross misjudgment because LISD was aware that C.L. was continuously bullied in the classroom and the bathroom and LISD failed to remedy the problem.  Response at p. 8.  Additionally, C.L. asserts that LISD was aware that C.L. was afraid of a particular student, that LISD was aware that C.L. was bullied by a student L.W. in the bathroom and the classroom prior to C.L.'s December 15, 2010 outcry, and failed to keep C.L. separated from L.W. in line and failed to keep L.W. and C.L. from using the bathroom at the same time. C.L. asserts that LISD assured C.L.'s parents he would be separated from L.W. and other "known bullies" and yet LISD continued to place C.L. in lines with L.W. and "forced" C.L. to go to the bathroom with L.W. and known bullies. Response at p. 8.  C.L. further maintains that LISD in not entitled to summary judgment because LISD knew of C.L.'s disabilities and failed to investigate disability-based discrimination and complaints, and failed to take

12

appropriate remedial measures once notice of the harassment was provided to school authorities. *M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 439 F.3d 865, 868 (8th Cir. 2006) (M.P. II).

C.L. has failed to present evidence creating a fact issue about whether LISD was aware that C.L. was continuously bullied in the classroom or the bathroom and failed to take prompt remedial measures. First, there is insufficient evidence to support the contention that C.L. was continually bullied in the bathroom.  The summary judgment evidence demonstrates that prior to the incident that is the basis of this suit, one incident occurred in the bathroom, and that was when C.L. was in kindergarten, over four years earlier.  Additionally, C.L.'s teachers testified that the children were monitored while they were in the bathroom as a group, and that a teacher always remained in the hallway outside the bathroom. Masiakowski Affidavit at ¶ 7; Kutac Affidavit at ¶ 7. Jamie Klassen testified that the doors of the bathroom in issue open out into a hallway and that the bathroom doors are always open.  Klassen Affidavit at ¶ 13.  She also testified that a teacher is always stationed outside the restroom when the children take group restroom breaks. *Id.*  In her deposition, E.L. testified that she was unaware if bathroom breaks are supervised by teachers at Mason Elementary and how bathroom breaks are conducted. E.L. Depo. at p. 128-129.

Additionally, there is no evidence that any LISD teacher or employee sent C.L. into a bathroom with a "known bully."  C.L.'s fourth grade teacher testified that C.L. never complained to her of any mistreatment or that any other student had been aggressive or threatening toward him in the bathroom or elsewhere.  Kutac Affidavit at ¶ 8.  Plaintiff has submitted no evidence that they notified C.L.'s fourth grade teacher about a "known bully" or that the teacher deliberately sent the children off to the restroom together.

The evidence also fails to demonstrate that C.L. was bullied continually in the classroom. Not counting the two incidents that occurred in the bathroom and the  "crank call" incident, Plaintiff

has identified five discrete occasions over more than four years he deems classroom "bullying." The first incident involved a kindergarten girl who was hitting C.L. The girl was reprimanded by the teacher.  The second incident involved first graders, two of whom were girls,  who were calling C.L. names and "canceled" him as a friend.  The principal agreed to meet with E.L. and C.L.'s teacher to discuss the incident. The third incident, occurring in third grade, involved a child reportedly punching C.L. in the forehead.  The child's parents were contacted, and the teacher and vice principal held a meeting with the entire class about respecting personal space and behavioral consequences.  The fourth incident, also occurring in third grade and reported May 25, 2010, involved a child who verbally threatened C.L. when C.L. touched him. The fifth incident, reported June 2, 2010, also in third grade, occurred when the same child again verbally threatened C.L. when C.L. touched him.  The evidence shows that the child was told not to say mean things and C.L. was told to respect the personal space of others.  The evidence also shows that the child was sent to speak with the counselor about resolving conflicts.  This history is not that of a student being "continually harassed" in the classroom.  Further, Plaintiff offers no evidence of any bullying reported in the fourth grade, until the bathroom incident reported on December 15, 2010.

Moreover, at each juncture, the alleged harassment was addressed by LISD quickly, appropriately, and professionally.  The record is replete with examples of the remedial measures that LISD took at every turn in this case. Principals and teachers reprimanded offending students, called parents, met with C.L.'s parents, met with the class and discussed the issue, and generally tried to quash any bullying of C.L. These are not the acts of school officials exhibiting bad faith or gross misjudgment. Other than separating C.L. from other students at all times, the Court cannot imagine actions LISD could have taken to insulate C.L. from the sort of normal day-to-day interactions that occur between children.  None of the prior instances relied upon by Plaintiff are sufficient to have

14

alerted LISD that C.L. would by physically, let alone sexually, assaulted in a school restroom.  C.L.'s parents removed C.L. from LISD after the December 2010 bathroom incident.  Thus, LISD never had an opportunity to put preventative measures in place to address that incident.

In an attempt to create a fact question and establish that LISD was on notice of consistent bullying of C.L., Plaintiff asserts in his Response that E.L. "testifies that the 2006 bathroom bullying as well as C.L.'s disabilities that prevented him from properly using the bathroom facilities were discussed time and time again in phone conversations and in ARDs."  Response at p. 9.  In support of this statement, Plaintiff cites to the Affidavit and Deposition of E.L. without citing to a specific page or paragraph. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir.2006).  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

Regardless, a review of the affidavit does not disclose this evidence.  In E.L.'s affidavit, she testifies that she brought up the 2006 bathroom incident "at least once a year at the ARDs."  Plaintiff's Ex. 1 at ¶¶ 3-4.  She also states that she orally notified C.L.'s teachers about the "continued bullying" of C.L by the "known bullies."  *Id.*  But, other than the e-mails detailed above, C.L. has no evidence of these reports to teachers and her ongoing concerns.  E.L. testified that as early as 2007 "I learned that I always have to do with Leander, I started making sure there was a paper trail."  Defendant's Ex. 6A, pp. 147.  Given this statement, it is reasonable to conclude that the written record is the complete record.  Other than the accounts detailed in the e-mails, C.L. has presented no evidence of other *specific* instances of alleged bullying she brought to the attention of LISD.  The summary judgment evidence establishes that at most E.L. complained that C.L. was in

danger of being bullied, or was a likely "target" for bulling due to his disabilities. E.L.'s affidavit does not add any more evidence of other complaints that should have put LISD on notice or required them to take actions beyond those it had already taken to protect C.L.

Taking all of the evidence before the Court, and making all inferences in favor of C.L, the only conclusion the Court can reach is that LISD did not "depart[ ] grossly from accepted standards among educational professionals." *Bennett,* 431 F.*3*d at 454–55 (quoting *Monahan*, 687 F.2d at 1171). The evidence presented does not rise to the level of "bad faith or gross misjudgment" or "deliberate indifference" by LISD. *D.A.*, 629 F.3d at 455. Accordingly, summary judgment should be granted to LISD on C.L.'s remaining claims.

## IV.  RECOMMENDATIONS

For the reasons set forth above, the Court **RECOMMENDS** that Defendant's Motion Summary Judgment (Dkt. No. 69) be **GRANTED** and that all of Plaintiff's remaining claims should be **DISMISSED WITH PREJUDICE**.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 20th day of December, 2013.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

17